

**STOKES LAWRENCE**

Elizabeth A. Findley
(206) 892-2171
elizabeth.findley@stokeslaw.com

December 6, 2019

*Via ECF*

Hon. P. Kevin Castel
Daniel Patrick Moynihan
United States Courthouse
Courtroom: 11D
500 Pearl Street
New York, NY 10007-1312

Application Granted.

So Ordered:

P. Kevin Castel
**United States District Judge**

12/10/2019

Re:    *HOV Services, Inc. v. ASG Technologies Group, Inc.*
       Cause No. 18-cv-09780-PKC
       Next Case Management Conference: April 3, 2020

Dear Judge Castel:

I am one of the attorneys for Defendant/Counterclaimant ASG Technologies Group, Inc. ("ASG") in the above-referenced matter. I write to respectfully request the Court's permission for leave to file under seal certain exhibits to my declaration in support of ASG's letter brief in support of its motion to compel.[1]

ASG will file on Friday, Dec. 6, its letter brief moving the Court to compel HOV Services, Inc. ("HOV") to produce source code, along with the Declaration of Elizabeth A. Findley. Cited in that brief and as exhibits to the Findley Declaration are the following documents produced by HOV in discovery and designated as "Confidential" pursuant to the terms of the Confidentiality and Protective Order (Doc. No. 26):

- Exhibit B (HOV0011591-615): Document DNA Mobius Transition plan from 2016.

---

[1] Due to the turnaround time for brief submission, the parties were unable to comply with the 14-day procedure contemplated by the Court's individual practices for seeking to file an opposing party's confidential documents under seal. However, the parties have conferred and have agreed to de-designate two documents and to submit this as a joint request to seal the documents that remain designated confidential.

055238.009 \ 28071889v1

Hon. P. Kevin Castel
December 6, 2019
Page 2

- Exhibit C (HOV0002231): select pages from a 11/22/2016 PowerPoint presentation referring to replacement of Mobius components with a HOV-created document archival and retrieval solution.

- Exhibit D (HOV0005504): October 5, 2018, internal HOV email regarding DocumentDNA and Mobius migration.

- Exhibit E (HOV0012043-45): Internal HOV email thread containing email from December 23, 2018 regarding migration, including Mobius access.

- Exhibit F (HOV0011764-65): Internal HOV email thread containing email from June 27, 2018 referring to attempts at decrypting Mobius annotations.

- Exhibit G (HOV0023081): Internal HOV email from October 20, 2018, regarding reading DAF files.

- Exhibit J (HOV0013547): Internal HOV email thread from October 22-23, 2018 referencing extraction from Mobius DAF.

- Exhibit K (HOV0002668): Internal HOV email thread from October 7, 2018, regarding decryption.

- Exhibit L (HOV0015838): Internal HOV email thread from October 5, 2018, regarding decryption.

- Exhibit M (HOV0002552): Internal HOV email from December 28, 2018, regarding reversion back to Mobius.

These exhibits will be separately submitted to the Court, and ASG respectfully requests that the Court enter an Order or this letter directing the Clerk of the Court to file the exhibits under seal.

## A.  Considerations Under *Lugosch*

To determine whether sealing is appropriate under the common law presumption of access, the court applies a balancing test.

At the first step, the Court must determine whether the documents that the proponent of the protective order seeks to protect are "judicial documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-120 (2d Cir. 2006). "In order to be designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" *Id.* at 119. If so, the document carries a common law presumption of access, and the second step requires the Court to assign a weight to that presumption along "a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to

Hon. P. Kevin Castel
December 6, 2019
Page 3

insure their irrelevance." *Id.* (quoting *United States v. Amodeo* ("*Amodeo II*"), 71 F.3d 1044, 1049 (2d Cir. 1995)). At the third and final step, the Court considers any competing factors that counterbalance the weight of the presumption, including the privacy interests of the proponent. *Id.* at 120.

To determine whether the qualified First Amendment right of access applies to written documents submitted to a court, the Second Circuit uses two methods. One method, the so-called "experience and logic" approach, requires the court to determine "whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question.'" *Id.* (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). The other method requires the court to determine the degree that the judicial documents "derived from or [are] a necessary corollary of the capacity to attend relevant proceedings." *Id.* (alteration in original) (quoting *Hartford Courant Co.*, 380 F.3d at 93). This determination tracks the first step of the *Lugosch* balancing test. Under the experience and logic method, the common law presumption of access to judicial documents generally supports a finding that the documents were historically open to the public. *Id.* Similarly, under the second method, when the parties submit judicial documents in connection with public judicial proceedings that themselves implicate the right of access, a qualified First Amendment right of access extends to such documents. *Hartford Courant Co.*, 380 F.3d at 93.

The presumption of access varies according to the nature of the judicial document to which access is sought. "Unlimited access to every item turned up in the course of litigation would be unthinkable." *Amodeo, supra*, at 1048. The Court of Appeals for the Second Circuit has held that "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* at 1049.

The claim of public access is strongest when the documents play a substantial role "in determining litigants' substantive rights." *Id.* "Fitting squarely within this definition are documents that served as the principal basis for a summary judgment motion; were introduced at trial; or were material and important to a decision to approve a consent decree." *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 412 (E.D.N.Y. 2007), *judgment entered sub nom. In re Zyprexa Litig.*, 07-CV-0504, 2007 WL 669797 (E.D.N.Y. Mar. 1, 2007), *and aff'd sub nom. Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010) (quotation marks omitted). "Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Amodeo, supra*, at 1050. "Falling outside the definition are documents produced by the parties in discovery." *Zyprexa, supra*, at 412. The inherent equitable power of courts to grant confidentiality orders is well-established, and the power to seal extends to court filings and documents produced in discovery. *Id.* at 413.

Hon. P. Kevin Castel
December 6, 2019
Page 4

If a qualified First Amendment right of access exists, the Court then considers whether the proponent of sealing can demonstrate that "higher values" outweigh that right. *Lugosch*, 435 F.3d at 124. This determination tracks the third step of the *Lugosch* balancing test's consideration of "countervailing factors."

Here, the parties' have agreed that certain documents shall be designated confidential pursuant to the parties' stipulated protective order (Dkt. 26). This includes information the disclosing party in good faith believes contains

> confidential, design, engineering, business, or development information; confidential research information; confidential commercial information; non-public financial information; trade secrets; confidential or private information about current or former employees, contractors, or vendors (including employee, contractor, and vendor personnel records); confidential customer information; information implicating an individual's legitimate expectation of privacy; or other information of a confidential, proprietary, private, or personal nature.

Dkt. 26 at p. 1-2.

I have conferred with counsel for HOV. On Thursday, December 5, I sent an email to counsel for HOV, identifying certain documents produced by HOV and designated as "Confidential" pursuant to the terms of the parties' protective order, and asking if these documents could be de-designated as "Confidential" or redacted to avoid the necessity of filing under seal. See Declaration of Elizabeth A. Findley, submitted in support of Motion to Seal, at ¶ 2. Counsel for HOV agreed to remove the confidentiality designation for two documents, and consented to a joint stipulated request to file the documents indicated under seal. See id. The documents in question concern HOV's relationships with its customers, customer data, reverse engineering ASG's proprietary software, HOV's process for migration and development of new programs, as well as other internal discussion of technological procedures. See id. at ¶ 3.

ASG wishes to bring these documents before the Court to support its motion to compel HOV to produce its source code. ASG has included the documents as of examples of the types of documents that gave rise to the allegations in its amended counterclaims, and to the claim of misappropriation of trade secrets, which led to its discovery requests. However, the documents for which sealing is sought are not necessarily directly necessary to support of the substantive request in ASG's motion because some of the documents that support ASG's contentions are already in the public record pursuant to the Court's order on ASG's July 2, 2019, motion to seal. Thus, the public will have access to the documents supporting ASG's motion to compel.

Hon. P. Kevin Castel
December 6, 2019
Page 5

For this reason, the public's interest in accessing the above-referenced documents is low. *See Lugosch*, 435 F.3d at 121 ("where documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches"); *In re Zyprexa Injunction*, 474 F. Supp. 2d 385 at 413 (documents produced by parties in discovery falls outside the definition of documents playing a substantial role in determining litigants substantive rights); *Amodeo*, 71 F.3d at 1050 ("Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason."). These documents are used as examples of information HOV has disclosed during discovery, and analysis of whether sealing is appropriate is therefore more similar to that for documents produced in discovery. This makes the claim of public access very weak. This weak access claim is contrasted with the parties' strong interest in maintaining confidential any documents that contain confidential information about the parties' business, business processes, proprietary technologies, and customers. As such, the parties' concerns regarding confidentiality outweigh the presumption of public access.

Accordingly, ASG, with HOV's consent, moves the Court for entry of an order sealing the above-referenced documents, attached to the Declaration of Elizabeth A. Findley, submitted in support of ASG's motion to compel HOV to produce its source code.

Very truly yours,

STOKES LAWRENCE, P.S.

Elizabeth A. Findley

cc:    All Counsel of Record

SO ORDERED: _____
              HONORABLE P. KEVIN CASTEL